[Civ. No. 1892. Third Appellate District.—November 23, 1918.]

LIEUELLA TISDALE (a Widow), Respondent, v. MELO-DILE BRYANT et al., Appellants; GEORGE TOUR-NEY et al., Defendants.

CONTRACTS—DURESS.—An agreement is not void for duress, merely because one of the parties to it being financially embarrassed the other party took advantage of such necessity to obtain a promise to pay a debt which was actually owed.

ID.—VIOLATION OF PROMISE TO RELEASE AN OBLIGATION.—The violation of a promise to execute a release of an obligation to pay money does not constitute coercion in any sense.

DEED—ACTION TO SET ASIDE—SUFFICIENCY OF CONSIDERATION.—In an action to set aside a deed for fraud where it is alleged that the grantor never received any consideration for executing it, but that he delivered it upon the promise of the grantee to pay one-half of the upkeep of the entire property, to contribute a monthly sum to the support of the grantee's parents then living with the grantors, to make other provisions for the education and advancement in life of a son of the grantor, and to reconvey the property to the grantors before the grantee should die, these promises constitute a sufficient consideration for the deed, and the pleadings in that respect are radically defective, in the absence of any allegation

that the promises were made without any intention of performing them.

Id.—Fraud—Failure to Perform Consideration.—A mere failure to perform a promise which constitutes the consideration for a deed does not constitute fraud.

Id.—Demand and Necessity Therefor.—Where no term is specified for the doing of an act other than the payment of money, a demand of performance is necessary in order to put the promisor in default. In such case the demand of performance must be made within a reasonable time.

Id.—Laches.—Where land was conveyed in consideration of the grantee's promise to contribute to the upkeep of the property, and to do certain things for the benefit of the grantor's family, and no demand of performance was made until ten years after the execution of the deed, and no action to set aside the deed was commenced until nearly four years thereafter, the right of action to set aside the deed was barred by laches.

APPEAL from a judgment of the Superior Court of Kings County.   M. L. Short, Judge.

The facts are stated in the opinion of the court.

Kottinger & Shepardson and Edgar M. Peixotto, for Appellants.

Jordan & Brann, for Respondent.

BURNETT, J.—The action was for the partition of some four hundred and eighty acres of land in Kings County, it being alleged in the complaint that the plaintiff and the defendant Melodile Bryant each owned an undivided one-half interest in the land.   The other defendants had liens on the property and they made no contest, but appellants in their answer denied that respondent had any interest whatever in the land, and they claimed that Melodile Bryant was the sole owner thereof.   They also filed a cross-complaint, seeking thereby to set aside a certain agreement, attached to their pleading and marked, Exhibit "B," of the date of September 1, 1915, executed by them on the one part, and by respondent and Edgar R. Bryant, now deceased, on the other.   Their attack upon the agreement is based upon the claim that said respondent and Edgar R. Bryant coerced them into signing said agreement, by taking advantage of their financial neces-

sities and embarrassment in connection with securing the money with which to pay off a three thousand five hundred dollar mortgage on appellants' eighty thousand dollar Modesto ranch, which mortgage was about to become due and could not be renewed. They sought also to have a deed executed by appellants to Edgar R. Bryant, the predecessor in interest of respondent, on the fifth day of July, 1901, set aside on the ground of fraud in procuring the same.

In addition, they brought an independent suit to accomplish the same purpose, alleging in their complaint substantially the same facts as appear in the cross-complaint herein. It is admitted that these two pleadings involve the same legal principles and the decision as to one will cover and determine the other.

In this agreement of September 1, 1915, appellants promised "to join in an equal division of the lands" involved in the partition suit, and "never again to question the validity of the deed executed by Melodile Bryant and Calhoun Bryant to Edgar R. Bryant on the 5th day of July, 1901." The particular feature of this agreement, however, concerning which appellants complain, and on account of which they asked to have the agreement set aside, was the promise therein contained on their part "to assume to pay certain indebtedness and evidences of indebtedness, amounting to the sum of about $4,300, growing out of the affairs of the Bryant Investment Co., and plaintiff's management thereof, and other matters from which said Calhoun Bryant and Melodile Bryant were to have been released from paying." The claim seems to be that the invalidity of this covenant vitiates the whole agreement, as the former is an inseparable part of the contract, and the said promise to pay the indebtedness is sought to be nullified for the reason already stated. But under the authorities, it is plain that the facts alleged do not amount to duress or coercion and compulsion as recognized by the law, and, for this reason: that it appears the advantage, if any, was taken of appellants' necessities for the legitimate and lawful purpose of obtaining from them a promise to pay a debt which they actually owed. The authorities on this point are cited in the brief of respondent, to which appellants have made no reply, and they seem decisive of the question.

*Cable* v. *Foley,* 45 Minn. 421, [47 N. W. 1135], was a case where plaintiff, being without means to pay his men, defend-

ants refused to pay him what they then owed him, unless he would sign three written contracts unfavorable to him. He signed them and afterward sued the defendants to recover the excess he would have been entitled to if he had not been so coerced into said settlement. The trial court directed a verdict for the defendants, and in sustaining its action, the supreme court said: "The mere threat to withhold from the party a legal right which he has an adequate remedy to enforce is not in the eye of the law duress. Certainly not such as will avoid the execution of a contract."

In *Hackley* v. *Headley,* 45 Mich. 569, [8 N. W. 511], the defendants, being indebted to the plaintiff in a large amount on a logging contract, and taking advantage of the fact that plaintiff was in great need of money with which to pay his woodsmen, who were cutting logs for plaintiff, refused to pay him what was due him unless he would take two thousand dollars less than what he was entitled to and receipt in full for all claims against the defendants. Plaintiff took the lesser sum and gave the defendants a receipt in full and subsequently sued them for the two thousand dollars, relying upon duress to avoid the contract.

Judge Cooley, speaking for the court, said: "In what did the alleged duress consist in the present case? Merely in this: That the debtors refused to pay on demand a debt already due, though the plaintiff was in great need of the money and might be financially ruined in case he failed to obtain it. It is not pretended that Hackley and McGordon had done anything to bring Headley to the condition which made the money so important to him at this very time, or that they were in any manner responsible for his pecuniary embarrassment (except as they failed to pay the demand). The duress, then, is to be found exclusively in their failure to meet promptly their pecuniary obligation." It was held that it would be "a dangerous, as well as a most unequal, doctrine" to enunciate that the contract was invalid because of the financial necessities of the plaintiff.

In *Silliman* v. *United States,* 101 U. S. 465, [25 L. Ed. 987], the owners of certain barges which were employed by the quartermaster's department, claimed that they were forced by duress of their property to sign new charter-parties at a reduced rate, but it was held "that neither the forcible retention of the barges nor the refusal to pay the compensation

agreed upon constituted duress.'' The court declared: ''We are aware of no authority in the text-books or in the adjudged cases to justify us in holding that the last charter parties were exacted under duress.''

*Fuller* v. *Roberts*, 35 Fla. 110, [17 South. 359], involved the foreclosure of a mortgage to secure the payment of a note for one thousand dollars. The defense was based upon duress, it being the claim that the note and mortgage were given to secure the dismissal of certain proceedings begun by the plaintiff. The lower court sustained a demurrer to the defense, and in upholding this ruling, the supreme court of Florida said: ''Legal duress implies that a party has been unlawfully constrained by another to perform an act under circumstances which prevent the exercise of free will. The act of the party compelling the unwilling obedience of another must be unlawful or wrongful, and there can be no duress of goods in law where the act done or threatened is nothing more than what the party had a legal right to do,'' citing cases.

In *Morton* v. *Morris*, 72 Fed. 392, [18 C. C. A. 611], the plaintiff brought an action to foreclose two certain mortgages executed by the defendant in settlement of their business affairs. The defense was that the mortgages were obtained by plaintiff through duress in this, that when the settlement was made a financial crisis existed; defendant was exclusively engaged in business; it was very hard to raise money and plaintiff threatened to sue defendant for an accounting and to have a receiver appointed. This would ruin defendant, and to prevent plaintiff from carrying out his threat defendant gave the mortgages in question for an amount largely in excess of what he actually owed defendant. The United States district court held that the facts averred were not sufficient to avoid the mortgages, and this judgment was upheld by the court of appeals for the eighth circuit. Therein it was said: ''The intent which actuates a creditor in seeking to enforce a legal claim or demand is ordinarily of no concern to the debtor and is not a matter for judicial inquiry. The latter is only entitled to complain when some act is done or threatened by the creditor which is, in itself, unlawful, or is contrary to equity. In the present case the acts charged in the answer as the basis for relief consisted in a demand made by plaintiff for an accounting and settlement when the defendant was in embarrassed circumstances, and in a threat to enforce such

demand by a civil action. Neither of these acts was unlawful, or so far harsh, oppressive, or unconscionable as to vitiate the settlement subsequently made.''

A peculiarly hard case was *Domenica* v. *Alaska Packers' Assn.*, 112 Fed. 554, involving the employment of plaintiffs as seamen on a voyage to and from the salmon fishing grounds in Alaska; also to work as fishermen during the season; to assist in canning the fish on shore and loading them on the ships for transportation. After arriving in Alaska they refused to carry out their contracts unless their wages were increased $50 apiece. Defendants' superintendent agreed to pay this additional compensation, because he could not get other men to take their places and great loss would be suffered because of the shortness of the season, if plaintiffs did not go to work catching and canning fish at once. Defendants in settling with plaintiffs refused to pay them the additional $50 compensation, and in allowing them to recover it the court said: ''In the case at bar, if the parties deemed it for their mutual interest so to do, it was competent for them to enter into the new contract sued on, and when they did this there was an implied discharge of the former contract, and the new became the measure of their rights, unless the consent of the defendants thereto was obtained by duress; and the facts appearing here do not show that the defendants acted under duress, in making that contract,'' citing *Goebel* v. *Linn*, 47 Mich. 489, [41 Am. Rep. 723, 11 N. W. 284], and *Hackley* v. *Headley*, 45 Mich. 569, [8 N. W. 511].

In *Taylor* v. *Ford*, 131 Cal. 440, [63 Pac. 770], plaintiff brought suit to cancel a note for $8,666.44 on which he had paid the defendant six thousand dollars, alleging that ''he was coerced into signing the note by threats of the defendant to sell his partnership in a lumber business in which they were associated 'to an entire stranger.' '' The court declared: ''The only coercion claimed by the plaintiff is that he was forced to enter into a contract and give the note in question, by reason of defendant's threats to sell out to a stranger, in violation of his contract, for a five years' partnership. That would not amount to coercion in law.''

It can make no possible difference if we regard the allegation of cross-complainants that respondent and the said Edgar R. Bryant had promised to execute a release of appellants from the obligation to pay said sum of four thousand three

hundred dollars. The violation of said promise would not constitute coercion in any sense. (9 Cyc. 448.) Appellants had their choice of standing upon said promise or executing the agreement of September 1st. They chose the latter alternative and must abide by it. It is equally plain that said cross-complaint does not present a case of fraud or undue influence. It follows that by virtue of said agreement, Exhibit "B," appellants were estopped from questioning the ownership of respondent in and to one-half of said real estate.

But, assuming that the allegations of said cross-complaint are such as to warrant the annulment of said agreement of September 1st, and treating the situation as though said agreement was invalid, we are still confronted with the said deed of July 5, 1901, which conveyed to plaintiff's predecessor in interest the legal title to one-half of said property. It was sought, however, in the cross-complaint herein, and in the complaint in the other action to which we have referred, to have the deed set aside on the ground of fraud. It is quite plain, though, that as to this point, the pleadings of appellants are radically defective. While there is an allegation that the grantor never received any adequate or valuable consideration for executing said deed, it does appear that she delivered said deed to Edgar R. Bryant upon his promises to pay one-half of the upkeep of the entire property, contribute ten dollars per month to the support of his parents, then living with appellants, and would prepare one of the grantor's sons for entry into a first-class medical school, thereafter at his own expense send said son to a medical school until he graduated, then associate said son with him in his practice, and when he retired from practice, turn it over to the son, the latter to take care of his mother's failing eyesight, and the grantee further promised to reconvey the property to appellants before he should die. Of course, these promises constitute a sufficient consideration for the execution of the deed and, it may be added, there is nothing in the pleadings to show that the promises were not made in good faith with the full intention to perform them. In fact, there is no hint of the perpetration of any fraud in the procurement of the deed. If it had been alleged that these promises were made for the purpose of deceiving the grantor and that the grantee had no intention of performing them, a different situation might be presented.

Appellants, however, seek to set aside said deed solely upon the ground that the grantee failed to perform some of his promises. A mere failure to perform an agreement, which constitutes the consideration for a deed, does not amount to fraud, but it may be ground for an action for damages for breach of the contract.

Moreover, we agree with respondent, that the laches of appellants afford an additional support for the conclusion of the lower court.

It appears that no demand was made on Edgar R. Bryant to educate the son of appellants until April 19, 1912, more than ten years after the promise to do so is alleged, and no excuse is shown for the delay; and this action to set aside the deed was not instituted until April 19, 1916, nearly fifteen years after the deed was executed.

The rule seems to be that where no term is specified for the doing of an act, other than the payment of money, that a demand of performance is necessary in order to put the promisor in default. (9 Am. & Eng. Ency. of Law, 2d ed., p. 200.)

"The primary object of a demand is to enable defendant to perform his obligation or otherwise discharge his liability without being subject to the inconvenience and expense of litigation." (1 C. J., p. 979.)

Furthermore, as there is no allegation that a time was fixed for the performance of this part of the consideration, it was incumbent upon appellants to make the demand within a reasonable time. "A party cannot by his own negligence or for his own convenience stop the running of the statute. The rule rests upon the principle that the plaintiff has it in his power at all times to do the act which fixes his right of action." (*William* v. *Bergin,* 116 Cal. 56, [47 Pac. 877].)

"If no cause for delay be shown it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action. There is the same reason for hastening the demand that there is for hastening the commencement of the action." (*Meherin* v. *San Francisco Produce Exchange,* 117 Cal. 215, [48 Pac. 1074].)

Moreover, after making such demand, appellants waited nearly four years before bringing the suit to set aside the deed. No sufficient excuse is shown for such delay, and the author-

ities are numerous to the effect that such want of diligence is fatal in this kind of a case.

Respondent also points out that appellants must fail because the *status quo* cannot be restored, but we deem it unnecessary to pursue the subject further, as we are satisfied that there is no merit in the appeal.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 23, 1918.