[Civ. No. 2715.    Third Appellate District.—January 24, 1924.]

JOHN J. MONTEVERDE, Appellant, v. BROOKE REALTY COMPANY (a Corporation), Respondent.

[1] VENDOR AND VENDEE—COVENANT TO IMPROVE STREETS—BREACH—EVIDENCE.—In an action by the vendee to recover payments made on account of the purchase of certain lots, basing a right of recovery upon the alleged failure of the vendor to perform his agreement to "construct, grade and improve the streets," the vendee fails to make out a case, where the surrounding circumstances and the mutual understanding of the parties as to the character of the street improvements contemplated are not shown, but it is shown that the streets were "graded."

[2] ID.—PREMATURE DEMAND BY VENDEE—SUBSEQUENT BREACH BY VENDOR—ABANDONMENT—RECOVERY OF MONEYS.—Notwithstanding the vendee under such contract based his demand for the return of the moneys theretofore paid upon the refusal of the vendor to do further street work, when the vendor thereafter declared that it would not comply with the provision of the contract requiring it to pipe water to the lots contracted to be sold, the vendee was thereby released from the duty of making further demand that

2. Vendee's right to rescind executory contract for purchase of land because of vendor's breach of covenant to make improvements, notes, Ann. Cas. 1914B, 862; 21 L. R. A. (N. S.) 823; L. R. A. 1917B, 403.

the vendor so provide water and was justified in treating the contract as abandoned by the vendor and suing for recovery of the moneys paid.

[3] ID.—TIME OF PERFORMANCE—ANTICIPATED BREACH.—Although the contract provided that the vendor would pipe water in sufficient quantities for domestic use along the street or alley adjoining the premises "within two (2) years" from the date of the agreement, which time had expired, "or" would furnish water "immediately upon notification in writing of the completion of a dwelling-house" by the vendee, when the vendor notified the vendee that it would not pipe water to the lots, the vendee was not required to await the refusal by the vendor to furnish water, after notice of the completion of a dwelling-house, before bringing action to recover the moneys paid.

[4] ID.—DEPENDENT COVENANTS — EXECUTORY CONTRACT. — A contract whereby the vendor agrees to sell certain lots and covenants to make certain improvements in connection therewith and the vendee agrees to buy said lots, paying a specified purchase price, payable so much down and the balance in monthly installments, is executory and the covenants of the parties are dependent.

[5] ID.—COVENANT TO FURNISH WATER — PERFORMANCE—EVIDENCE.— A covenant by the vendor "to pipe or cause to be piped water in sufficient quantities for domestic use along the street or alley adjoining" the premises contracted to be sold "within two (2) years" from the date of the agreement, "or furnish water immediately upon notification in writing of the completion of a dwelling-house" by the vendee, is clear and certain, and is material, and if there is anything to excuse performance thereof the burden is on the vendor to show it; and putting down a well and installing a pump is not the performance of such covenant.

[6] ID.—FAILURE OF VENDOR TO PERFORM—RECOVERY OF MONEYS PAID —LACHES.—A party to an executory contract, who still has it in his power to perform a dependent covenant, and who has in nowise suffered loss by reason of the other party's delay in demanding performance, is in no position to set up such delay as a defense in an action by the latter to recover payments theretofore made, basing such right of action upon the failure and refusal of the former to perform.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Reversed.

The facts are stated in the opinion of the court.

6. Right of vendee to recover payments made on rescission of contract for sale of land, notes, 30 L. R. A. 50; L. R. A. 1918B, 540.

V. L. Hatfield and W. H. Hatfield for Appellant.

Dunn & Brand for Respondent.

FINCH, P. J.—The complaint alleges that on or about the twenty-fourth day of January, 1921, the defendant became indebted to Mary Monteverde in the sum of $1,239.22 "as and for money had and received by the defendant from the said Mary Monteverde in successive and continuous monthly payments . . . for the use and benefit of said Mary Monteverde"; that she assigned her claim for said money to plaintiff and that no part thereof has been paid. The answer denies the allegations of the complaint. The court found that the claim of Mary Monteverde had been duly assigned to plaintiff as alleged but that the other aforesaid allegations of the complaint are untrue and gave the defendant judgment for costs. Plaintiff appeals from the judgment.

The case was submitted in the trial court upon an agreed statement of facts. From such statement it appears that by two written contracts, dated respectively July 5 and July 12, 1911, the defendant agreed to sell and Mary Monteverde agreed to buy two lots in North Sacramento Heights at the price of $700 each, an initial payment of $70 to be made on the first lot and $10 on the other, the remainder to be paid at the rate of $10 a month on each lot. The terms of the two contracts were the same except as to the descriptions of the lots and the amounts of the initial payments. The lots were unimproved and have remained unimproved and vacant at all times. Monthly payments were made from time to time, but not regularly as provided in the contracts. Defendant, however, took no steps to forfeit the purchaser's rights under the contracts and in May, 1921, all installments of the purchase price had been paid except the total sum of $205. May 4th, the defendant tendered a deed on condition of the payment of the sum of $205 and the next day the purchaser offered to make the payment on condition of the performance by defendant of a covenant of the contracts reading as follows: "The seller agrees to pipe or cause to be piped water in sufficient quantities for domestic use along the street or alley adjoining the herein described premises within two (2) years from this date, or furnish water immediately upon notification in writing of the completion

of a dwelling-house by said vendee. Also to construct, grade and improve the streets and highways in said subdivision.'' During May, 1921, plaintiff, as agent of Mary Monteverde, ''demanded of defendant that water be piped to said lots,'' but defendant refused but ''did offer to dig a well and place a pump thereon.'' During 1911 and 1912 the defendant ''graded said streets by scraping the dirt from the sides of said streets or highways, leaving a crown in the center with a gradual slope to the gutters, the center being approximately twelve inches higher than the gutters; scraped, harrowed and rolled the said streets and highways, making a smooth even surface. . . . No curbs, gutters or sidewalks were actually constructed or laid, except dirt curb and gutters.'' Water was at no time piped along the street or alley adjoining the lots.

In September, 1921, W. H. Hatfield, as agent and attorney for plaintiff and Mary Monteverde, made formal demand upon defendant that the street ''be constructed, graded and improved'' and was informed by defendant that no further work would be done thereon. Thereupon Hatfield wrote defendant that Mary Monteverde accepted defendant's refusal as an abandonment of the contracts and demanded the return of all moneys paid thereon. The defendant replied in writing, saying: ''If you will take this matter up with Dunn & Brand, they have full authority to act in the matter.'' Thereafter Hatfield took the matter up with Clyde Brand, of the firm of Dunn & Brand, and was informed that the defendant ''would do no further street work than had already been done, . . . nor would defendant company pipe water to said lots, but that it would dig a well and provide a pump for the purpose of supplying water therefor.'' This action was then commenced for the recovery of the moneys paid on the contract.

[1] In so far as concerns the alleged failure of defendant to ''construct, grade and improve the streets,'' the plaintiff failed to make a case. The streets were graded. The covenant to construct and improve the streets has no fixed and certain meaning. The surrounding circumstances and the mutual understanding of the parties as to the character of the street improvements contemplated are not shown. As said in *Blahnik v. Small Farms Improvement Co.*, 181 Cal. 379, 382 [184 Pac. 661], ''the contract was altogether silent in regard to the character and kind of work that was to

be done upon the roads. If there was any agreement on that subject, or any plan relating thereto adopted by defendant and acquiesced in by the plaintiff, it was not set forth in the contract. So far as appears, it was in parol only. Such an agreement would be collateral and supplemental to the contract contained in the writing, and, as parol evidence thereof would not be inconsistent with the contract and would not alter it in any respect, evidence thereof would be admissible if material to the issues.''

[2]  It appears from the stipulated facts, however, that the defendant refused to perform its covenant to pipe water to the lots and informed plaintiff's agent and attorney that it would not perform such covenant. It is true that when demand was made for the return of the moneys paid on the contract, such demand was based upon defendant's refusal to do further street work but, when defendant thereafter declared that it would not pipe water to the lots, the plaintiff was thereby released from the duty of making further demand that the defendant so provide water and was justified in treating the contracts as abandoned by the defendant and suing for recovery of the money paid, without any demand other than the suit. (*San Diego Construction Co.* v. *Mannix,* 175 Cal. 548, 553 [166 Pac. 325] ; *Walker* v. *Harbor Business Blocks Co.,* 181 Cal. 773–778 [186 Pac. 356] ; *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 10 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].)

[3]  Respondent states in its brief: ''Since there has been no completion of a dwelling-house upon the lot covered by the contract the time for the performance of the contract in this respect has not yet arrived.'' Conceding, for the purposes of the argument only, that this contention is well founded, when the defendant informed the plaintiff's agent that it would not pipe water to the lots, ''it was not necessary for the plaintiff to defer bringing his action until the full time had expired during which the defendant might have made the improvements.'' (*Walker* v. *Harbor Business Blocks Co., supra.*)

[4]  It must be kept in mind that the contracts were executory and that the covenants of the parties were dependent (*Mills* v. *Richmond Co., Inc.,* 56 Cal. App. 774, 776 [206 Pac. 486] ). Authorities relating to covenants contained in executed contracts have no necessary bearing upon the questions here involved. ''The consideration for which the plain-

tiff and his assignor agreed to pay the sums specified was the lots improved according to the terms of the contract. . . . It is thus apparent that there was a failure of the consideration of the obligation to pay to the extent that the lots were less valuable without the improvements than with them; also, that it was a failure of the consideration 'in a material respect' before it was rendered, that is to say, before the title was conveyed. The cost of these improvements would certainly amount to a considerable sum, and the value such improvements would add to the lots must be presumed to be a material part of the consideration to the vendees.'' (*Walker* v. *Harbor Business Blocks Co., supra.*) **[5]** It certainly requires no argument to show that the value of having water piped to a residence lot is material or that putting down a well and installing a pump is not the performance of a covenant to so pipe water. The covenant is clear and certain and if there was anything to excuse performance the burden was on defendant to show it.

**[6]** Respondent contends that the plaintiff and his assignor were guilty of laches, though this argument is directed largely to the question of failure to improve the streets. If directed to the failure of defendant to pipe water to the lots, it is inconsistent with respondent's contention that ''the time for the performance of the contract in this respect has not yet arrived.'' In any event, a party to an executory contract, who still has it in his power to perform a dependent covenant, and who has in nowise suffered loss by reason of the other party's delay in demanding performance, is in no position to set up such delay as a defense in an action such as this. The defendant could have avoided loss or injury by doing what it had agreed to do. The plaintiff, under the agreed statement of facts, was entitled to judgment on the ground of the defendant's refusal to perform its covenant to pipe water to the property.

The judgment is reversed.

Plummer, J., and Young, J., *pro tem.*, concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 24, 1924.

All the Justices concurred.