[Civ. No. 5237.   Third Appellate District.—March 19, 1935.]

GARTH OTTNEY et al., Respondents, v. R. J. FINNIE, Appellant.

Rich, Weis & Carlin for Appellant.

Seth Millington and Ralph W. Rutledge for Respondents.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against him in a suit instituted by the nine plaintiffs herein to recover the purchase price which each paid, together with damages for costs expended by each incident to contracts for undivided interests in real property and for memberships in a country club to be established and maintained by the appellant thereon. The complaint contains nine counts, each one of which specifies the separate claims of a plaintiff. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiffs. A judgment against the defendant was rendered accordingly.

The respondents claim that the evidence in support of the judgment shows breaches of the membership agreements and

an abandonment of the enterprise by the defendant, entitling the plaintiffs to a return of the money which they paid for their respective interests in the property, together with the amount of money each expended for improvements which they constructed on the property in reliance upon the fulfillment of the contracts on the part of the defendant. The appellant seeks to reverse the judgment on the grounds that the evidence fails to show breaches or an abandonment of the agreement on his part, and that the action is barred by the provisions of the statute of limitations.

There is some conflict of evidence regarding the alleged breaches of contracts on the part of the defendant, but the following facts are sufficiently supported by the record: The defendant purchased 157 acres of mountain land in Shasta County about fifty miles east of Redding, known as Brokeoff Meadows, through which the Manzanita Creek flows. He bought this land for $6,240 in 1925. He also owned two lots at Juniper Lake in Lassen County. In 1927 he conceived the idea of converting this property into a country club and selling 200 undivided interests therein, entitling each purchaser to membership in the club with all privileges incident thereto, including the right of each member to select a site upon which he could construct and use his own cabin. The members were to enjoy the privileges of the use of the property to the exclusion of others. The membership interests were to cost $600 evidenced by promissory notes payable in four annual instalments, upon the satisfaction of which the defendant agreed to execute to the purchasers deeds of conveyance to their respective interests therein. Upon the sales of membership interests in the property brief uniform memoranda in writing were prepared by the defendant and signed by the purchasers. Only three of those memoranda of sales were also signed by the defendant. Apparently he retained these documents in his possession. They were not dated, and they contained no specified time within which the defendant was to complete the securing of the 200 members or the construction of the improvements which he agreed to make on the premises, except the following clause: "Upon completion of the membership you (the defendant) are to construct a Lodge upon the property which shall be known as the Brokeoff Mountain Alpine Club and agree to spend in road improvement and

in the construction of said lodge with equipment not less than $20,000.00.'' Only members of the club were entitled to use the property. The written memoranda of sales provide in that regard: ''I (the purchaser) am to be entitled to possession of said premises after June 1, 1927, in common with other persons *executing agreements similar to this agreement.*'' An elaborate printed prospectus advertising the advantages of membership in the club was issued by the defendant and delivered to the purchasers of interests in the property, in which it was stated that ''thousands of dollars'' would be expended in improvements, that ''only the Club members and their guests are allowed on the property'', and that, ''This property is to be placed in trust for the absolute security of your investment and the carrying out of the membership agreement.'' Regarding the nature of the improvements which the defendant agreed to make on the property, he testified without objection as follows: ''Q. Now you have heard the testimony of these plaintiffs and others regarding . . . an electric lighting plant . . . and the swimming pool and the golf course and other items, those things were talked of were they not? A. Yes, sir, those things were all contemplated and were all talked of and they were all more or less to be included in the expenditure of the $20,000 when that $20,000 was available after these memberships were sold.''

The defendant testified that he sold about 40 memberships from 1927 to 1931, including those which were purchased by the plaintiffs, but that only 17 contracts were in force at the time of the trial of the suit, the others having been forfeited for nonpayments on the part of the purchasers. He admitted that he had not sold any memberships after 1931, claiming that the depression prevented further sales. He admitted that he had collected $8,979, on account of sales of shares in the property, and that he had expended in the construction and maintenance of the club house the sum of $2,000, and in the building of the roadway the additional sum of $3,000. Both the club house and the roadway were permitted to deteriorate. There is evidence that the club house windows were broken, the roof leaked and the floor was out of repair. The roadway was nearly impassable; the dam which impounded the water of Manzanita Creek for a swimming pool had gone out during flood

water, and the swimming pool was abandoned; the golf course had not been constructed nor the lighting plant installed. No other improvements were made. Cabins were leased to strangers in violation of the agreement, and they were accorded privileges of the use of the property by the consent of the defendant. March 16, 1932, the defendant met with several of the plaintiffs in the office of Mr. Seth Millington at Gridley during which conference the plaintiffs complained of the failure of the defendant to comply with his agreements and demanded the prompt fulfillment of the terms of the contract on his part, including the conveyance of the property to trustees who were then selected. A written agreement to that effect was immediately prepared by the plaintiff Millington and forwarded to the defendant, which was not signed or returned by him. Several of the plaintiffs testified that the defendant then said that he was interested in promoting another hotel property at Viola, where the defendant had lived for three years past, and that he did not intend to continue to sell shares in the Brokeoff Meadows property. It was conceded that the last share in the last-mentioned property was sold in 1931 to a man by the name of Peart, who defaulted in his payments and forfeited his interest therein. In the spring of 1933 each of the nine plaintiffs served notice of rescission of their contracts and demanded the return of their membership payments, together with the money which they had expended in constructing cabins and improvements on the property. This suit was commenced April 5, 1933.

This is not a suit for specific performance to enforce the provisions of a written contract for an interest in real property. It is an action for damages for the breach of agreements to convey undivided two-hundredths interests in real property together with memberships in a country club to be established thereon, including the enjoyment of benefits to be derived from improvements costing $20,000 to be constructed thereon within a reasonable time. The damages also include the money expended by some of the plaintiffs for cabins and improvements placed by them on the premises in reliance upon the fulfillment of the contracts on the part of the defendant. Nine individuals joined in the complaint. The claims for reimbursement of each plaintiff are specifically set out in separate counts of the pleading. While it

is not alleged that written contracts were executed, the specific terms of the membership agreements were alleged together with the breaches and the abandonment thereof by the defendant and a subsequent serving of notice of rescission of the contracts and demand for the return of the money expended by each of the plaintiffs on account thereof. The answer denies the material allegations of the complaint, but admits the making of the membership agreements which it is asserted were confined to the terms of the written memoranda thereof. The answer acknowledges the receipt on the part of the defendant of the sums of money alleged to have been paid to him, and that he agreed to expend $20,000 in improvement of the premises ''after he had secured 200 members'' for the club, which he was unable to accomplish on account of the depression. The answer also pleads the bar of the suit by the statute of limitations.

The court found that from June 30, 1927, to September 1, 1929, the defendant entered into agreements with the various plaintiffs for memberships in the country club as alleged in the complaint pursuant to which they paid the defendant membership fees and interest on deferred payments thereof, the following amounts: Ottney, $665.74; Knock, $557.82; Long, $600; Taylor, $579.60; Lawrence, $600; Pence, $550; Wilson, $600; Craig, $680, and Millington, $564. In addition thereto the following named plaintiffs expended in improvements constructed on the premises in reliance upon the defendant's contracts with relation thereto the following amounts: Ottney, $850; Knock, $749.22, and Pence, $1269.50, no part of which sums had been repaid; that the defendant agreed to expend $20,000 in improvements, but that the contracts did not specify the time within which the improvements were to be constructed, but that after the lapse of a reasonable time therefor, the defendant failed, neglected and refused to complete the membership list or construct the improvements and abandoned his contracts; that the defendant breached the terms of his contracts by expending for improvements not more than $5,000, and by failing within a reasonable time to adequately construct and maintain the club house or roadway, together with other promised improvements, by failing to complete his membership list, by renting cabins and permitting persons who were not members of the club to occupy and use the prem-

362

ises, and by failing and refusing after demand therefor to convey the property to trustees for the benefit of the members, contrary to the provisions of the agreements. It was also found that adequate notices of rescission of the contracts were served, together with demands for the return of the money expended by each plaintiff, and that the action was not barred by the provisions of the statute of limitations. Thereupon judgment was rendered in favor of the plaintiffs for the sums above specified, together with interest thereon. From this judgment the defendant has appealed.

■ The findings and judgment are sufficiently supported by the evidence. While there is a conflict of evidence in that regard, the record supports the finding to the effect that the defendant abandoned his contracts and refused to complete his membership list of the country club, or to construct the improvements on the property agreed upon. The plaintiffs and other witnesses testified to that fact. The written memoranda of agreements specify that *"upon completion of the membership* you (the defendant) are to construct a Lodge upon the property . . . and agree to spend in road improvement and in the construction of said lodge with equipment not less than $20,000.00"*. Six years elapsed after the making of the first contract before this action was commenced. Over four years elapsed after the making of the last contract which is involved in this suit before the contracts were rescinded by the plaintiffs. For approximately two years the defendant apparently made no effort to sell memberships in the country club. We are satisfied that not only does the evidence support the finding that the defendant abandoned his contracts, but it also shows that his failure to complete the membership list of the country club and construct the improvements agreed upon for an unreasonable period of time constitute a breach of the contracts upon which the plaintiffs are justified in maintaining their suit to recover the money which they expended pursuant thereto.

■ Since the contracts specify no limitation of time within which the membership list was to be completed or the improvements made, the law affords a reasonable time therefor. (Sec. 1657, Civ. Code; *Williams* v. *Bergin,* 116 Cal. 56 [47 Pac. 877]; 6 Cal. Jur., p. 218, sec. 143; 6 R. C. L., p. 646, sec. 60.) Section 1657 of the Civil Code provides

in that regard: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." The question as to what constitutes a reasonable time for the performance of acts depends upon the circumstances of each particular case.

It has been held that in the absence of a stipulated time within which a contract must be fulfilled, where a demand therefor is necessary, that such demand may be made within the time limited by statute for the maintenance of an action for breach of the contract or for the termination thereof. (*Meherin* v. *San Francisco Produce Exchange*, 117 Cal. 215 [48 Pac. 1074]; *Caner* v. *Owners Realty Co.*, 33 Cal. App. 479 [165 Pac. 727]; *Tisdale* v. *Bryant*, 38 Cal. App. 750 [177 Pac. 510].) In the Meherin case, *supra*, it is said in that regard:

"What is to be considered a reasonable time for the purpose (of demand) does not appear to be settled by a precise rule. It must depend on circumstances. If no cause for delay be shown it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action."

The appellant contends that the statute of limitations began to run in the present case from the dates upon which the final payments were made by the respective plaintiffs upon their membership agreements, and that this action is therefore barred against all of them. In support of his claim in that regard, the text in 16 California Jurisprudence, page 522, section 121, is cited as follows:

"When upon full performance by the purchaser of a contract to convey land the vendor refuses to convey as agreed, the purchaser may sue to recover back the purchase money paid. And if the contract contains no provision for a demand for a deed to put the vendor in default, the statutory period runs from the date of the last payment made under the contract, without the necessity of a demand either for the deed, or for the return of the money paid under the contract."

In the present case, however, the contracts were not merely for the purchase of an interest in the real property and the conveyances of those interests by deeds. The chief consideration for the payments of membership fees, was the securing of 200 members of the club and the expenditure

of $20,000 by the defendant in improvements to supply a
club house, roadway and all the benefits of a country club
organization. The authorities cited in support of the pre-
ceding text, upon which the appellant relies, are cases in
which no consideration was involved except the conveyance
of land upon the payment of the specified purchase price
therefor. That text has no application to the situation
which exists in this case.

The portion of the text in 16 California Jurisprudence,
section 121, which follows the above-quoted language does
apply to the circumstances of this case. It reads:

"Where no express time of performance is fixed, a pur-
chaser is not obliged to treat the contract as abandoned
upon its breach, but has his election still to rely upon it;
and the statute does not commence to run against a right
of action to recover money paid under the agreement until
there is an election no longer to rely upon the contract
and to sue for the money paid."

The chief consideration for which the plaintiffs in this
case paid their money was the promise of the defendant to
secure the 200 members of the club and to expend $20,000 in
improvements. The appellant claims that this expenditure
was not required of him except "upon completion of the mem-
bership". The statute of limitations, therefore, began to
run when the defendant abandoned his contract to secure
the membership, or when the plaintiffs elected to declare
the contracts void for the breach thereof by the defendant.
At the conference which occurred in the law office of Mr.
Seth Millington, March 16, 1932, for the first time the
defendant declared that he would attempt to sell no more
memberships. The plaintiffs then elected to declare their
reliance upon the defendant's breach of contracts, and then
demanded the return of their money. We are of the opin-
ion the statute of limitations began to run at that date.
The written memoranda of membership in the club
together with the printed prospectus may be deemed to
constitute the contracts between the respective parties.
These documents should be construed as parts of the same
contract. (Sec. 1642, Civ. Code.) The statute of limita-
tions therefore authorized the commencement of this action
within four years from March 16, 1932. (Sec. 337, Code
Civ. Proc.) This action was therefore not barred by the

statute of limitations. The suit does not purport to be based on the doctrine of *assumpsit*. It is similar to the case of *Monteverde* v. *Brooke Realty Co.*, 65 Cal. App. 435 [224 Pac. 247], which is determinative of the question involved.

The appellant contends that the court erred in admitting evidence over his objection, of agreements on the part of the defendant to construct improvements on the property other than the club house and roadway, on the ground that such evidence varies the terms of the written contracts. Assuming that the written memoranda constitute the contracts between the parties, notwithstanding the fact that the defendant did not sign them, the appellant admitted, without objection thereto, that "those things were all contemplated . . . and they were more or less to be included in the expenditure of the $20,000.00". Moreover, the challenged evidence of a failure to perform covenants other than the construction of the club house and roadway, mentioned in the memorandum contract, is harmless, for there is ample evidence that independently of the other omissions the defendant abandoned his contract to secure 200 members of the club and failed to construct and maintain the club house or roadway in the manner agreed. The evidence objected to is merely cumulative and therefore harmless.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1935.