[Civ. No. 5649. Third Appellate District.—January 9, 1937.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. LANE MORTGAGE COMPANY (a Corporation), Appellant.

Arthur William Green and C. H. Scharnikow for Appellant.

Edmund Nelson, Hugo A. Steinmeyer, Freston & Files, Ralph E. Lewis and Louis Ferrari for Respondent.

THOMPSON, J.—The defendant has appealed from a money judgment which was rendered against it in a suit brought pursuant to the terms of a written contract, for refusal to purchase from the plaintiff and pay a promissory note secured by trust deed.

The complaint is couched in two counts. The first cause is for specific performance of the contract. The second cause alleges that the contract amounts to a guaranty on the part of the defendant to pay on demand the indebtedness represented by the note. The defendant answered the complaint denying the material allegations thereof, except that the making of the contract was acknowledged. Affirmative defenses are alleged to the effect that the contract was procured without adequate consideration; that it is unilateral and unenforceable because the plaintiff is not bound by the terms of the contract to sell the note; that the lapse of nearly four years from the execution of the contract renders the

plaintiff guilty of laches, and that the enforcement of the contract would be inequitable and unjust since the value of the note and the real property upon which it is secured by the trust deed have greatly depreciated since they were executed.

Findings were adopted favorable to the plaintiff. Judgment was accordingly rendered against the defendant for the unpaid balance of the note amounting to the sum of $135,000 and interest at the rate of 7 per cent per annum from August 5, 1932, together with attorney's fees in the further sum of $1800 pursuant to the terms of the note and contract, conditioned on the transfer and delivery to the defendant of the note and trust deed at the time of the satisfaction of the judgment. From this judgment the defendant has appealed.

The appellant contends that the complaint fails to state a cause of action for either specific performance or *assumpsit;* that the court therefore erred in overruling the demurrer; that the court failed to adopt findings upon material issues which are presented by the pleadings; that the findings and judgment are not supported by the evidence for the chief reason that there is an absence of proof of damages; that the contract is unilateral and unenforceable, and that the plaintiff is guilty of laches for failure to demand the purchase or payment of the note for a period of nearly four years after the execution of the contract.

Charles C. Carl owned six parcels of land in Long Beach and Los Angeles, which were appraised at $266,500. Prior to March 7, 1930, the defendant, Lane Mortgage Company, loaned to Mr. Carl from time to time various large sums of money, aggregating approximately the sum of $185,000. These loans were represented by a promissory note for that sum secured by a trust deed upon the real property. The Lane Mortgage Company was desirous of being relieved of this loan, and persuaded the Bank of America of California, the predecessor in interest of this plaintiff, to refinance and assume the loan by paying the defendant the entire sum due from Mr. Carl, and to accept a new note and trust deed upon the real property for the sum of $185,000. In a letter addressed to the bank, Mr. W. G. Lane, president of the Lane Mortgage Company, represented the value of the lots to be in excess of $375,000. He also promised that if at any time

the bank became dissatisfied with the loan the Lane Mortgage Company would purchase and pay for the note the face value thereof upon thirty days' notice. After some investigation, the bank consented to and did refinance the loan on the terms agreed upon with the defendant. A new note and trust deed were executed by Mr. and Mrs. Carl for the sum of $185,000, with interest at the rate of 7 per cent per annum payable quarterly. The note was dated February 5, 1930, and became payable to the Bank of America of California in three years from the date thereof, together with reasonable attorney's fees in the event of the necessity of bringing an action for the collection of the note.

As a part of his transaction, in accordance with the previous mentioned agreement, the following written contract was executed by the Lane Mortgage Company and by the Bank of America of California. The material portion of that contract reads as follows:

### "AGREEMENT TO PURCHASE

"This Indenture, made this 7th day of March, 1930, by and between Lane Mortgage Company, a corporation, First Party, and Bank of America of California, Second Party,

### WITNESSETH:

"Whereas, First Party has heretofore made sundry loans to Charles C. Carl, which said loans amount in the aggregate to approximately One Hundred and Eighty-five Thousand Dollars ($185,000.00) and are secured by liens upon the real property hereinafter described; and

"Whereas, First Party desires that said loans be refinanced by Second Party and Second Party is willing to refinance said loans upon the request of First Party at its instance and in reliance upon the promises of First Party hereinafter contained;

"Now, Therefore, it is agreed that Second Party will refinance said loans, and to that end will loan to said Charles C. Carl and his wife approximately the sum of One Hundred and Eighty-five Thousand Dollars ($185,000.00), said loan or loans to be made for a period of three (3) years and to carry interest at the rate of seven per cent (7%) per annum, payable quarterly. Such loans shall be further secured by first trust deeds upon the real property hereinafter described,

said trust deeds to be made in favor of Corporation of America, as Trustee, and with Second Party as Beneficiary.

"In consideration of the premises First Party agrees to purchase from Second Party the notes evidencing said loans by Second Party to said Charles C. Carl, together with the trust deeds securing same, at a sum equal to the face value of said note or notes so evidencing said loans, with accrued interest thereon, upon demand by Second Party upon First Party made at any time on or after thirty (30) days from the date of the said note or notes, the purchase price thereof to be paid by First Party to Second Party at the time of making said demand.

"The real property hereinbefore referred to and upon which said first liens are to be imposed, is described as follows:

(Here follows description of property)

"First Party further agrees that in the event there be a default in its covenants herein contained and suit be commenced or an attorney employed to enforce or attempt to enforce this agreement, that First Party will pay to Second Party its costs incurred, including a reasonable allowance for attorney's fees."

As added security, to induce the bank to accept the application for the loan, the Lane Mortgage Company gave to the bank its certified check for $50,000. This certificate was supplied a few days after the note and trust deed were executed. March 26, 1930, Mr. Lane sent the certificate for that sum to the bank, accompanied with the following letter:

"In the matter of the loan made by your bank to Charles C. Carl and Ella J. Carl of One Hundred Eighty Five Thousand Dollars ($185,000.00), *which loan was made at our request* and which we have agreed to purchase from you if requested, wish to state that in our opinion the bank's appraisers put an exceedingly low value on the properties. I believe that Long Beach appraisers would consider the cash value to be in excess of Three Hundred Seventy Five Thousand Dollars ($375,000.00).

"However, we wish you to feel that the loan is amply secured, and, are accordingly handing you herewith your Certificate of Deposit, No. 399, for Fifty Thousand Dollars ($50,000.00) to be held by you as additional security for

the note of One Hundred Eighty Five Thousand Dollars ($185,000.00) executed by Charles C. Carl and Ella J. Carl.

"Yours truly,

"(Signed) W. G. LANE,

"President."

The $185,000 loan was consummated. The entire amount was disbursed pursuant to directions. Over $166,000 of that amount was paid to Lane Mortgage Company to satisfy Carl's indebtedness to it. Two claims aggregating $11,000 and interest were paid to two Building and Loan Associations. The balance, which was less than $2,000, was paid to Carl. In July, 1931, by consent, one of the mortgaged parcels of land was sold for $50,000 and the proceeds were applied upon the $185,000 note. Immediately after this payment of $50,000, Mr. Lane asked to withdraw his $50,000 certificate of deposit which was held as additional security, saying that he had urgent need for the money. He was permitted to do so. He attempted to persuade the bank that the remaining land which it held as security was still worth approximately $275,000. The note did not mature until February 5, 1933. In the fall of 1932, Carl defaulted for the first time in the payment of interest on his note. In December of that year Mr. Taylor, the vice-president of the plaintiff bank, talked with Mr. Lane about the default and the uncertainty of Carl's ability to make payments. Within the next few months Mr. Taylor, vice-president of the bank, talked with Lane about the matter quite often. He testified in that regard: "I had so many conversations with Mr. Lane that I can only recall some of them, . . . they were too numerous." During these negotiations Mr. Lane never suggested that he did not consider his company bound by the written agreement to take the note over and pay for it upon demand therefor. The evidence warrants the inference that he was constantly encouraging the bank to believe the owner of the land would procure a sale of other property and greatly reduce the indebtedness or that his company would pay for it. It was even suggested they were trying to procure a federal loan to refinance the indebtedness. The depression decreased the value of the land considerably. March 10, 1933, an earthquake occurred in that vicinity and the market for property in Long Beach was temporarily destroyed. Its value was thereby greatly depreciated. The

plaintiff then promptly and repeatedly demanded of the Lane Mortgage Company that it fulfill its obligation under the written agreement and accept and pay to plaintiff the unpaid balance on the note amounting to $135,000. The Lane Mortgage Company recognized its liability by seeking to procure an adjustment of the matter. It proposed to give plaintiff additional security on certain Oceanside property which it owned. April 29, 1933, the bank wrote a letter to the Lane Mortgage Company in that regard, in which it was said:

"Further consideration has been given to the $135,000 balance note executed by Chas. C. and Ella J. Carl, in connection with which we hold an agreement to purchase, executed by the Lane Mortgage Company.

"This is to inform you that we are not interested in taking a second lien on the Oceanside real estate and we must insist that delinquent interest and taxes be paid immediately.

"Consideration will be given to an extension, provided additional security is given in the form of an assignment of the interest in the first lien of $100,000 on the Oceanside property, held by the Lane Mortgage Company."

Mr. Taylor testified that in 1933 the Mortgage Company requested additional time to effect the payment of the note. He said in that regard:

"Mr. Lane said that the Lane Mortgage Company wouldn't take up the note and requested additional time to see what could be done to effect payment or adjust it."

Mr. Taylor said that if the matter was not promptly adjusted he would be compelled to foreclose the trust deed. Mr. Lane told him "that he didn't want to proceed with any action for the foreclosure of the indebtedness; that he thought it could be worked out to the benefit of all concerned".

During these negotiations there was no suggestion on the part of the Lane Mortgage Company that it did not consider itself liable under the contract to repurchase and pay for the note upon demand. Mr. Taylor testified that the first time the plaintiff received any intimation that the defendant intended to repudiate its agreement to purchase and pay for the note was in January, 1934. February 20, 1934, Mr. Lane wrote to the Bank of America, saying that the company was informed by its attorney that the bank had waived its

right to enforce the contract by failure to make demand on the defendant to purchase and pay for the note within a reasonable time. Formal written demand to fulfill the agreement was served on the defendant March 2, 1934, and a legal tender of the assigned note and trust deed was then made. The demand and tender were rejected. The bank had lost hope of procuring from the defendant an adjustment or satisfaction of the indebtedness. Four years from the time of its execution the contract was about to expire. It was feared the statute of limitations would bar the action to enforce the defendant to purchase and pay for the note. For that reason demand was served and this action was commenced March 3, 1934.

We may assume that specific performance will not lie under the circumstances of this case for the reason that there is an adequate remedy in a suit at law. It may be conceded the complaint therefore fails to state a good cause of action on the ground of specific performance of the contract to purchase and pay the note.

We are, however, of the opinion the complaint states a good cause of action to enforce the purchase and payment of the note and trust deed pursuant to the terms of the agreement, and that the demurrer was therefore properly overruled.

The second cause of action alleges an indebtedness due in a specific sum for the breach of an obligation to pay money pursuant to the provisions of section 3302 of the Civil Code. It also alleges a liability for what amounts to a guaranty to pay a specific sum due upon the promissory note of Mr. and Mrs. Carl, upon their default in the payment thereof at maturity, as provided by section 2807 of the Civil Code. The second count refers to the preceding agreement as exhibit "A" and makes it a part of the complaint. It alleges that Charles C. Carl and wife were indebted to the defendant in the sum of $185,000, represented by a note and trust deed for that amount; that in consideration of the defendant's promise to repurchase and pay for the note after thirty days' notice, on demand, according to the terms of the written agreement, the plaintiff did refinance and loan to Mr. and Mrs. Carl said sum of $185,000 upon their executing and delivering to plaintiff their note secured by trust deed upon the Long Beach and Los Angeles property, no part of

which indebtedness had been paid except the sum of $50,000, and interest to August 5, 1932. The note is referred to as exhibit "B" and also made a part of the complaint. It appears the note matured February 5, 1933, and that the makers thereof defaulted in further payments of either principal or interest thereon. The agreement recites facts sufficient to constitute adequate consideration for defendant's promise to repurchase and pay for the note on demand therefor. In addition to the prayer for specific performance of the contract under the first count, the complaint also prays for judgment against the defendant for the unpaid portion of the note amounting to the sum of $135,000 and interest and counsel fees according to the terms of the note and contract.

█ The complaint alleges adequate consideration for the defendant's promise to repurchase and pay for the note. That consideration appears not only in the allegations of the complaint, but also in the recitation of the terms and conditions of the written agreement itself. The benefit which accrued to the defendant in consideration of its promise to purchase and pay for the note was the fact that it escaped from the necessity of continuing to carry the loan of Mr. and Mrs. Carl, and that it thereby received and enjoyed the use of money which it had invested in the loan to the extent of over $166,000. It appears that, except for the defendant's promise to purchase and pay for the new note upon thirty days' notice, the plaintiff would not have refinanced the loan and thus remove the responsibility from the shoulders of the defendant. That furnishes good consideration for the promise to pay the note. Section 1605 of the Civil Code defines a good consideration for a promise to fulfill an obligation as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

█ The contract to purchase and pay the note is not void or unenforceable for lack of mutuality or on the ground that it is unilateral because the plaintiff does not thereby specifically agree to sell or convey the note to the defendant.

The chief inducement for the defendant's promise to purchase and pay the note was the bank's agreement to refinance and loan to Mr. and Mrs. Carl the sum of $185,000, thus relieving and reimbursing the defendant for the entire amount which it had invested therein. The plaintiff's agreement in that regard was fully performed. In the case of *Los Angeles Traction Co.* v. *Wilshire,* 135 Cal. 654 [67 Pac. 1086], it is held that such performance on the part of the plaintiff transformed the agreement into a bilateral contract so as to estop the defendant from asserting the unilateral nature thereof, especially after the plaintiff fulfilled the only remaining obligation imposed upon it by tendering to the defendant the assigned note and trust deed. The court there says in that regard:

"The contract at the date of its making was unilateral, a mere offer that, if subsequently accepted and acted upon by the other party to it, would ripen into a binding enforceable obligation. When the respondent purchased and paid upwards of fifteen hundred dollars for a franchise, it had acted upon the contract; and it would be manifestly unjust thereafter to permit the offer that had been made to be withdrawn. The promised consideration had then been fully performed, and the contract had taken on a bilateral character, and if appellant thereafter thought he discovered a ground for rescinding the contract, it was, as it always is, a necessary condition to the rescission that the other party should be made whole as to what he had parted with on the strength of the contract. . . . It (notice of withdrawal) came too late, after the obligations of the parties had become fixed."

We are of the opinion the plaintiff was not guilty of laches in failing to demand the repurchase and payment of the note for a period of time less than four years from the date of the contract, under the circumstances of this case. The contract was dated March 7, 1930. The note did not mature until February 5, 1933. Within a month thereafter the bank did demand of the defendant that it assume and pay the obligation. Negotiations toward that end were previously carried on. From that date until formal written demand was made, by its conduct and statements the defendant encouraged plaintiff to believe that it would procure the satisfaction of the obligation. March 2, 1934, within the

time allowed by the statute of limitations for the commencement of a suit on the contract, formal written demand together with valid tender of the assigned instruments was served upon the defendant. Virtually the very purpose of the contract was to guarantee the security and the payment of the obligation on the part of the defendant. The security was not seriously impaired until the earthquake occurred March 10, 1933, at which time demand was promptly made upon the defendant for the payment or adequate security of the debt. Its conduct prevented the bank from making a more prompt formal demand to fulfill the contract, by encouraging the bank to believe the obligation would be paid or adequately secured.

It has been frequently held that in the absence of a stipulated time within which a contract must be fulfilled, where a demand therefor is necessary, that such demand may be made within the time limited by statute for the maintenance of an action for breach of contract or for the termination thereof. (*Meherin* v. *San Francisco Produce Exchange,* 117 Cal. 215 [48 Pac. 1074]; *Caner* v. *Owners Realty Co.,* 33 Cal. App. 479 [165 Pac. 727]; *Tisdale* v. *Bryant,* 38 Cal. App. 750 [177 Pac. 510]; *Ottney* v. *Finnie,* 5 Cal. App. (2d) 356, 363 [42 Pac. (2d) 714].)

In the case of *Vickrey* v. *Maier,* 164 Cal. 384 [129 Pac. 273], many authorities are cited in support of the statement that:

"Unless there are peculiar circumstances affecting the question [of laches], a time coincident with that of the statute of limitations, will be deemed reasonable."

It is true, as the appellant asserts, that the bank did not demand of the defendant that it purchase and pay for the note until after the makers thereof had defaulted, and the value of the security had depreciated on account of the prevailing depression and the damage to the property which resulted from the earthquake of 1933. It is also true that the depreciation of the value of the security, by virtue of the general depression and the earthquake, was not anticipated by the parties at the time of the execution of the contract. But these facts are immaterial to the determination of the defendant's liability. It is apparent that the very purpose of procuring the written agreement from the defendant to

pay the note on demand was to protect the bank against just such unforeseen contingencies.

■ It was not necessary for the bank to first foreclose the trust deed and satisfy the obligation as far as possible against the makers of the note as a condition precedent to maintaining an action against the defendant for its direct promise to purchase the note and pay plaintiff "the face value of said note" pursuant to its express agreement to that effect. The second cause of action in this suit is for a liquidated sum of money due upon the breach of an obligation on the part of the defendant to pay "the face value of the note" on demand after thirty days' notice to fulfill the contract.

■ Nor was it necessary for the plaintiff to prove the amount of damages other than to show the unpaid portion of principal and interest which was due upon the note. This was pleaded and proved. The unpaid amount of the note and accrued interest was a mere matter of computation. The judgment which was rendered, including the attorneys' fees which were allowed, is in accordance with the terms of the note and the allegations of the complaint. It conforms to the provisions of section 3302 of the Civil Code, which reads:

"The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."

While it is true that the contract contains no specific words guaranteeing the payment of the note to bring it within the language of section 2787 of the Civil Code, the reading of the contract impels the conclusion that, in effect, it is a guaranty on the part of the defendant to pay for the default of the makers of the note. The note matured February 5, 1933. The makers of the note had defaulted in the payment of both principal and interest at that time. Section 2807 of the Civil Code provides that:

"A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice."

The court rendered a money judgment against the defendant for the unpaid principal on the note in the sum of $135,000 and interest at the rate of 7 per cent per annum from August 5, 1932, together with reasonable attorneys' fees fixed

at the additional sum of $1800, and costs of suit. The judgment was conditioned upon the delivery to the defendant of the assigned note and trust deed, which had been tendered and were deposited in court subject to the final determination of the action. The judgment is adequately supported by the findings and by the evidence.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.