[Civ. No. 18698.   First Dist., Div. One.   Jan. 11, 1961.]

E. FILIPPI et al., Plaintiffs and Respondents, v. CLARENCE A. McMARTIN, Defendant and Respondent; ROSETTA SANGIACOMO et al., Appellants.

Barbagelata, Zief & Carmazzi, Robert D. Barbagelata, Bohnert, Davis & McCarthy and Thomas E. Davis for Appellants.

Roy D. Reese for Plaintiffs and Respondents.

Hartley R. Appleton for Defendant and Respondent.

COAKLEY, J. pro tem.*—Plaintiffs in this action are three separate subcontractors who furnished labor and materials in the construction of a building on land owned by defendant Rosetta Sangiacomo, herein sometimes called owner. The other defendants are Clarence A. McMartin, the contractor who contracted with the owner to construct the building, Angelo C. Sangiacomo, a brother of Rosetta, and the United States Fidelity and Guaranty Company, herein called Guaranty. The last named defendant was surety on McMartin's labor and material and performance bonds.

Plaintiffs' action was for recovery of money due them and for foreclosure of mechanics' liens which each had recorded.

Answers were filed by all defendants. Cross-complaints were

---

*Assigned by Chairman of Judicial Council.

filed (1) by the owner against McMartin and Guaranty, and (2) by Guaranty against the owner. The cross-complaints were duly answered. The gravamen of the owner's cross-complaint is that McMartin and Guaranty be required to pay plaintiffs directly, or in the alternative, to reimburse her in the amount of any judgment had by plaintiffs against her or her property, plus her costs and attorneys' fees.

One of the affirmative defenses asserted by Guaranty to the owner's cross-complaint was that Guaranty would not have issued its bonds as surety for McMartin had it not been for McMartin's fraudulent representations as to his net assets, which fraud was actively participated in by Angelo Sangiacomo, the owner's agent; that by reason of such fraud Guaranty's suretyship, while enforceable by plaintiff subcontractors, is not enforceable by the owner as against Guaranty in the event the court decrees foreclosure of the mechanics' liens. In its cross-complaint Guaranty prayed: (1) that the owner take nothing on her cross-complaint as against Guaranty; (2) that if there be a judgment for the plaintiffs, it be satisfied out of the property of Rosetta Sangiacomo; and (3) that if plaintiffs have judgment against Guaranty, the judgment also provide that if Guaranty pays said judgment, it, Guaranty, be subrogated to all claims and causes of action which the plaintiffs have against the property of Rosetta Sangiacomo.

The trial court made findings on all material issues and rendered judgment as follows:

(1) In favor of each plaintiff in specified amounts totaling $6,736.61, and against McMartin and Guaranty.

(2) Decreeing foreclosure of the mechanics' liens on the property of Rosetta Sangiacomo, and in the event of a deficiency that a judgment for same be had against McMartin and Guaranty.

(3) That plaintiffs are not entitled to a personal judgment against the owner, or Angelo Sangiacomo.

(4) That the owner take nothing against Guaranty, but that she recover from McMartin any loss she may suffer arising out of the transaction and judgment.

(5) That if Guaranty pays the amount found to be due plaintiffs, Guaranty shall be subrogated to all of the rights of the plaintiffs under the judgment, including the liens.

The owner appeals from those portions of the judgment which deny her a recovery against Guaranty and which subrogate Guaranty to the lien rights of the plaintiffs in the event Guaranty makes payment to them.

On the issue of fraud in connection with the owner's procurement of the bond, the trial court expressly found that throughout the entire transaction Angelo was authorized to act for, and did act for his sister Rosetta, the owner, and that Angelo actively participated in the fraud practiced by McMartin on Guaranty.

The appellant-owner asserts a number of reasons why the finding of material fraud should not be permitted to stand. None merits discussion herein except the proposition that ''. . . [a] person cannot be held as a conspirator because his agent may have been a participant in a conspiracy,'' and her statement ''that there is no law directly in point in California'' on the subject. ▇ To the contrary, our Supreme Court in *Rutherford* v. *Rideout Bank* (1938), 11 Cal.2d 479 [80 P.2d 978, 117 A.L.R. 383], citing sections 261 and 262 of the Restatement of the Law of Agency, held that, '' 'A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.' '' (*Supra*, at p. 484.) The court in that case expressly disavowed language to the contrary in *Miller* v. *Citizens National Trust & Savings Bank of Los Angeles* (1934), 1 Cal.App.2d 470 [36 P.2d 1088]. The record in our case is clear that all the negotiations which culminated in the contract between the owner and McMartin were conducted by Angelo on behalf of Rosetta Sangiacomo and that he provided McMartin with the specifications and consulted on changes, and that the owner's participation consisted largely of signing the contracts and visiting the job site occasionally. The record is also clear that Angelo actively participated in the fraud practiced by McMartin on Guaranty, and but for Angelo's collusion in making it possible for McMartin to pad his statement of assets, Guaranty would not have bonded McMartin.

▇ '' 'It is fundamental that where a judgment is attacked on ground that it is not supported, the power of the appellate court ends when it shall once have determined that there is substantial evidence which will support the conclusions of the trial court.' '' (*Viner* v. *Untrecht* (1945), 26 Cal.2d 261, 267 [158 P.2d 3] ; see also *Key* v. *McCabe* (1960), 54 Cal.2d 736 [8 Cal.Rptr. 425, 356 P.2d 169].) Accordingly, the judgment must be affirmed, unless, as urged by the owner, as a matter of law the liability of the surety is absolute not only in relation to valid labor and material lien claimants, but also in relation

to the owner-obligee under the bond despite the owner's fraud in bringing about the execution of the bond.

As between the surety and plaintiff lienholders, it is undisputed that Guaranty is liable to them notwithstanding the fraud of the owner's agent in connection with the execution of the bond. "The surety or sureties on any bond given pursuant to any of the provisions of this chapter shall not be exonerated or released from the obligation of the bond . . . by any fraud practiced by any person other than such laborer, materialman, or like person as is seeking to recover on the bond.'' (Code Civ. Proc., § 1200.1.)

It is likewise settled that absent an owner's fraud in bringing about the issuance of the bond, a surety who has paid the claims of the valid lien claimants is subrogated to the rights of such former lien claimants as against the principal but not as against the property. (*Merner Lumber Co.* v. *Brown* (1933), 218 Cal. 136 [21 P.2d 590] ; Code Civ. Proc., § 1185.1.) But we know of no statute or decision of a court of this state which denies to such surety the right to proceed against the property of the owner whose fraud gave rise to the surety's liability to laborers or materialmen.

In support of her position that Guaranty can have no lien against her property, appellant cites Civil Code, section 2847 (a surety has no claim for reimbursement against persons other than the principal whose obligation he has satisfied) ; section 2848 (surety acquires the right of the creditor upon satisfying the obligations of the principal) ; section 1473 (payment of the principal's obligation by whomsoever extinguishes the debt) ; section 2909 (the lien is extinguished when the obligation is paid) ; and Code of Civil Procedure, section 1200.1 (see quotation, *supra*).

But the codes are silent on the subject of fraud committed upon the surety by the owner-obligee of the bond. And in the absence of a clearly expressed legislative intent to the contrary, we may not construe them as designed to reward or to place a protective cloak around those guilty of fraud. Such a construction is not only unreasonable but would be contrary to public policy.

In *Estate of Elizalde* (1920), 182 Cal. 427 [188 P. 560], the court held that the code provisions on suretyship were not intended to state all of the law on the subject; and that where the code is silent the common law governs. The court in that case then said, quoting Sheldon on Subrogation, that, " 'Subrogation is a doctrine of equity jurisprudence although its

140

principles are often applied in courts of common law; especially in those states in which equitable remedies are administered through the forms of law . . . it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. . . . It is so administered (here) [meaning in the United States] as to secure real and essential justice without regard to form.' '' (P. 433.) (See also *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959), 167 Cal.App.2d 369 [334 P.2d 658].)

■ In *Employers etc. Ins. Co.* v. *Pacific Indem. Co.*, last cited, this court stated that the requisites of subrogation are: '' '(1) Payment must have been made by the subrogee to protect his own interest. (2) The subrogee must not have acted as a volunteer. (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid. (5) Subrogation must not work any injustice to the rights of others.' '' (P. 376.) Each of these elements is present, in substance, in our case. Thus, under the judgment Guaranty is liable to the plaintiffs for the entire amount of the debts and is prepared to pay same; in paying the judgment Guaranty will not be acting as a volunteer; Guaranty, the subrogee under the judgment, was not primarily liable for the debts, McMartin having the primary liability; and, finally, subrogating Guaranty to the mechanic lien rights of the plaintiffs, as against the owner's property, upon Guaranty's payment of the judgment, does not work any injustice to the rights of others.

The cases cited by appellant in support of her contention that under no circumstances may a surety be subrogated to the mechanic lien rights of creditors, as against the property, are distinguishable on their facts from our case. None involved fraud on the part of the owner as in this case. In one of the cases cited by appellant there was an attempt to raise a question of the owner's fraud in the procurement of the bond. When the case reached the state Supreme Court, that court refused to consider the point for the reason that ''the record is destitute of either plea or proof thereof.'' (*Howard* v. *Fisher* (1929), 86 Colo. 493 [283 P. 1042].)

■ We hold, therefore, that the trial court properly found appellant responsible for the fraud of her agent upon the surety, and that by reason thereof (1) the appellant cannot recover from Guaranty in the event that foreclosure is had or that she pays the holders of the liens; and (2) if Guaranty

pays the amounts found to be due the lienholders, Guaranty shall be subrogated to the lien rights of the lienholders.

Independent of its finding of fraud as the basis for its judgment subrogating Guaranty to the plaintiffs' lien rights against the property upon Guaranty's payment of the claims of the plaintiff, the court also found that without Guaranty's consent the owner had made the last two payments to McMartin substantially in advance of the dates called for by the contract upon which the bonds were issued, with resultant prejudice to Guaranty. This finding constituted an additional ground upon which the court found subrogation in favor of Guaranty against the property. The appellant assigns this as error. In view of our affirmance of the judgment on the basis of fraud and the presence of all of the essential elements of the doctrine of subrogation, for all of which there was substantial evidence, we need not consider the additional ground upon which the court based its judgment.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied January 31, 1961, and the petition of appellant Rosetta Sangiacomo for a hearing by the Supreme Court was denied March 8, 1961.